Good morning. May it please the Court and Counsel, my name is Amy Kraus and I am here representing Pancho Garcia. As the Court is aware, before I begin with the substance of my argument, I will watch the clock and reserve three minutes for rebuttal. Three, okay. As I started to say, Pancho Garcia is serving an 11-year sentence that was imposed after his convictions for aggravated assault with a firearm. He never disputed that he chased a vehicle. He never disputed that he fired a gun. The only real issue that the jury had to decide was what was his intent at the time that he fired off two shots on Mission Road in the jurisdiction of the Tohono O'odham Reservation. The jury deliberated that issue after hearing irrelevant testimony and without the benefit of instructions that reflected his theory of the case. It's my intention to start with that issue, the jury instruction issue, unless the Court would rather me start elsewhere. So moving along. As this Court is well aware, a defendant is entitled to an instruction for any defense that is recognized in law for which there exists evidence sufficient for a reasonable jury to find in his favor. There's a low threshold for the evidence that is required in order to get an instruction to the jury. In fact, this Court has held that evidence that is slight or weak or inconsistent or even that of doubtful credibility is enough. In this case, Mr. Garcia was entitled to his requested instructions because they were supported by law, there was evidence in the record, and the remaining instructions that were read to the jury did not cover his theory of the case. So what precisely is the instruction that you wanted and you did not get? Your Honor, the instruction is based on that clause that is found within the aggravated assault statute itself that says that an aggravated assault is not committed if there is just cause or excuse. Actually, I think it says and excused. Just cause and excuse. But, Counsel, so the problem, of course, in this case from the get-go is your client is accused of using lethal force to defend property. Your Honor, that is true, but I don't think that that summarized all of the case. As you know, this story was truly, I would say, not a comedy of errors at all, a tragedy of errors. There were numerous mistakes of fact that any one of which, if corrected at the time it had been made, would have changed the outcome. But do any of them constitute a defense? They do, Your Honor. And they do because the assault statute says, without just cause or excuse. That's an affirmative defense. I want to clarify, in case there's any question, that although the defense trial counsel submitted a jury instruction that indicated this is an element of the offense, when the instructions were settled later on, he corrected that to make the correct statement of law, which is that that clause constitutes an affirmative defense. And as an affirmative defense, he was entitled to an instruction that said something like, if you find, by preponderance of the evidence, that the defendant acted with just cause or excuse, then you must find him not guilty. So what's the just cause for excuse, even taking his story? His story is, I was trying to disable the vehicle by shooting out one of the tires. That's right. So what just cause or excuse did he have for doing that under the law? I understand his psychological feeling of just cause, but what legal just cause did he have for that? I would distinguish that phrase just cause and excuse from the instruction statutes, which require very specific elements to be proven. With just cause and excuse, that's not defined in the statute, and it's really not defined in law. And I would suggest that the approach this Court should take is to look at that clause very much like we look at the instruction on intent, which we no longer give. We allow jurors to determine for themselves what intent means, what specific intent means. And I believe that jurors were entitled to use their own judgment to determine what just cause and excuse meant. That instruction also ties into the second part of what the defendants requested, which was a subjective mistake of fact instruction. That instruction was based on very plain law that simply states where you have a specific intent crime, such as aggravated assault, then a subjective mistake of fact can negate criminal culpability. And when those two are read together, then the defense gets to present its entire argument that Mr. Garcia's – Mr. Garcia was acting on mistaken assumptions from the very beginning, beliefs that he honestly held, although they were mistaken, and he acted in the context of his life, in his experience, in the events of those days, of that night, to prevent who he believed to be burglars fleeing from his property. Now, the jury was certainly free to disregard that as being just, but I believe that was up to the jury to determine. When Judge Zapata settled these instructions, Your Honors, he said this is a matter of credibility. The jurors have heard both sides, and they should be able to listen to both sides and determine whether they believe Mr. Garcia's intent was specifically to do harm to these victims, or whether his intent, as he testified, was to immobilize the victim to stop – the victim's vehicle to stop them from fleeing with his property. And if that – if Judge Zapata, as he recognized, is a matter of credibility, that should have been for the jury to decide, not just did he have the specific intent, but was there any cause that excused him from having that specific intent in committing those acts. Do you agree with the other side that he had no legal cause or excuse? No, Judge, I'm not. What's the legal cause or excuse? The legal cause or excuse was his subjective mistaken belief, honestly held, that these people had burglarized his house and were about to flee with his property. And that justified using lethal force? That justified him using force to immobilize a vehicle that was going to get away and which, by the way, he believed had fired the first shot. If you recall the – But he was chasing the vehicle. I understood, in terms of the mistake of fact, the one that might have had some traction was that one, that he misunderstood who had fired the first shot, didn't realize that it was his brother. But since he was the one chasing the vehicle as opposed to being chased, it's a really tough argument to make, isn't it? It would be, Your Honor, if it was just a matter of chasing the vehicle. But if you recall, the relevant time period and the relevant place is what happened on Mission Road on the reservation. And at that time, the vehicles were stopped. Mr. Garcia had pulled in front of the victim's vehicle and turned to block them in. He opened his car door. He walked into their headlights. It was a dark night, March 29th, 9 o'clock at night. He waved his arms in a manner to suggest, who are you and what are you doing? And Ms. Town testified that she understood his gesture to mean just that. He didn't have a gun in his hand. He had nothing in his hands. I'm really running out of time, but I really want to answer this question for you, if I may. Ms. Town testified she understood he – she didn't see a gun at that time. And then as she sped away, Mr. Garcia heard a shot, and he believed it did not come from his brother, Norman. He believed it came from his vehicle and that they had just shot at him. So the two shots that he fired were return fire. That's what he says. The jury's not – the jury doesn't have to believe that. Correct. You're very right, Your Honor. The jury doesn't have to believe it, but our position is that the jury had a right – Mr. Garcia had a constitutional right to have the jury know not just the elements of the crime, but also to know that there was an affirmative defense that they were approved by a preponderance of the evidence. And with that, I'll reserve my remaining minute for rebuttal, if I may. Thank you. Good morning, Your Honors. I'm Angela Woolridge, appearing on behalf of the United States. I'll first address the issue of the jury instructions briefly, as that was the focus of counsel's argument. As the Court pointed out, there is no legal cause, there is no legal excuse for the defendant's actions in this case. And a justification instruction would not be appropriate because there was absolutely no evidence to support such an instruction, even though, as counsel points out, the threshold is low, that there still must be some evidence to support an instruction on a defendant's requested theory of his defense. Same for the mistake of fact instruction. Let me ask you this. Let's assume the facts are a little bit different. Let's assume that he believed in good faith that the people driving away had stolen from him, which may or may not be true. Let's assume further – and I think this is not true – let's assume further that he could, by shooting at the tires of the vehicle, have a good chance of immobilizing the vehicle and there was zero risk of his hitting any of the passengers. Would he have had justification for doing that in an attempt to stop the escape of the thieves? No, Your Honor, because the firing of a firearm is still action that could cause death. It could cause suicide. No, no, no. You're not going along with me. If there was a zero risk of causing death. I just don't know that that's possible with firing a gun at individuals. If that were so… So what if, for example – and I realize this is not what actually happened – what if, for example, the people were in the house stealing things. He goes out to the car and he shoots out the tire. Is he entitled to do that? In other words, he's destroying their property in an attempt to prevent the theft. Can he do that? No, Your Honor, because justification requires that the defendant be under an unlawful and present threat of death or serious bodily injury. You're not answering my question. This is a hypothetical. The people are in the house or he thinks they're in the house. They're maybe in the back kind of looking around, trying to get in the house, trying to figure out who's there. He thinks they're stealing and he thinks so in good faith. He doesn't want them to get away. He shoots their tire. The only living being within 100 yards of him is a jackrabbit. Is he entitled to do that? Your Honor, I don't believe that he would be. Again, I don't believe that justification would support that. In any event, though, these are not the facts that we have. Well, the reason I'm asking that, though, is if he is shooting at the tires and there's minimal risk to the individuals, is that dramatically different from the case where there was zero risk? I think it is dramatically different, because even when you have minimal risk, there is still a risk of serious bodily injury or even death. Now, is he charged with creating risk or is he charged with intending harm? He's charged with intending harm. Yeah. And that's really, and that was the government's theory throughout the entire case, is that he intended harm. Regardless of what the real risk was, regardless of whether there was zero risk or minimal risk or great risk, as we contend there was in this case, his intent was to do harm. That was our theory and that's what he was convicted. And there's evidence to show that he did intend to do harm by the fact that he pointed the gun at the vehicle, by the fact that he knowingly and intentionally fired two shots at the vehicle. He testified by his own admissions that he knew that by firing the gun at individuals that he could harm them, that he could kill them. He acted violently and continued to act violently even after the charged acts in this case, trying to force the victims off the road, firing at them many more times. We heard testimony about how the ---- You see, that's your version, that's not his version. He says, I never fired at the people. Actually, he claimed that at some point, but as the government pointed out, he made a number of statements. In fact, he said, I shot at an officer. He was, he was, became frightened when at the end of the chase when he found out that she was a probation officer. In his own words, I shot at an officer. So while he did contend at times that, that he was firing at the vehicle, he then admitted on other times that he was actually firing at the people in the vehicle. So ---- Counsel, Counsel, Judge Gould, if I could interject a question. Certainly. What's the total, and I think I knew this, but to refresh my memory, please, what's the total amount of time of the chase from when he first starts shooting at the vehicle to the point where it crashes? Your Honor, it was about an 18-mile chase. I believe that it lasted about a half an hour, and that's just a rough estimate. The record say 20 minutes. I apologize. So, approximately 20 minutes. Is it possible, is it possible that, to take the hypothetical of Judge Fletcher, is it reasonably possible that a person could be trying to just immobilize a car for 20 minutes that all they're shooting is just at tires? Is it possible that that could have been his intent? Certainly, it's possible, but that's not what the evidence proved in this case. And the government, our position is the government presented sufficient evidence that he did, in fact, intend to cause bodily harm, and that's, in fact, what he was convicted of, of a crime that required his intent to do bodily harm, based on all of the circumstances, including his own statements, his own admissions, but his also all of his actions throughout the incident that took place that evening. Okay. Is it possible, within the government's theory of the case, that he could have been convicted if intent to do bodily harm was not merely by the mechanism of shooting the individual, but by shooting out the tires when the car was traveling at a higher rate of speed, resulting in serious injury because of the act of the follows? Is that consistent, or was that within the government's theory as intent to do bodily harm? Your Honor, that would be – I don't know that it was specifically argued in that realm, but I know that it was mentioned that the fact of shooting out tires at a high rate of speed could cause a vehicle to lose control, could cause a vehicle to crash and cause injury to the persons. And aside from the obvious injury that could cause from firing a gun at someone and striking them. So – I know later on, outside the jurisdiction, they were traveling on paved roads and at fairly high rates of speed. Do we know how fast the vehicle was traveling when the shots that give us the jurisdiction, the shots at issue, were fired? When the shots at issue were fired, we don't know exactly. We do have the testimony of the victims that they basically sped off as quickly as they could. And also from both the defendants that the vehicle sped off very quickly. We don't have a speed estimate at that point. With regard to the mistake of fact instruction, the fact that the defense argues that he was mistaken about and should have received an instruction was knowledge – was his lack of knowledge that the victims were probation officers. However, the identity of the victims is not an element of the crime. And the fact that the crime itself is a specific intent charge does not change that in any way. That specific intent has to do with the intent to do bodily harm, not the intent to do bodily harm to an officer, not the intent to do bodily harm to any specific individual. Now, should there be a mistake of fact that would have ameliorated the intent to do a water gun, for instance, that would perhaps be a mistake of fact that would apply. But because the identity of the victims is immaterial, that mistake of fact would not – was not – did not relate to the offense and would not have created a defense to the charge. So there was no legal reason for that mistake of fact instruction. Counsel, could I ask a different question about the evidentiary ruling? Of course. How is the ATF officer's experience in Virginia about what a residential burglary looks like relevant to this case? Your Honor, as the judge pointed out, as the district court judge pointed out, the defense made that relevant because he said he raised the issue in questioning the victim that she was doing things consistent with a burglary. And he said that was your attempt to show that those things were consistent with a burglary in process. Pervasive throughout the defense theory of the case by both defense counsel was this that the victims, specifically Probation Officer Susan Towne, caused these events to happen because she was acting like a burglar. In fact – Counsel, to be clear, my question is how does the ATF officer's experience, what he thought did or did not look like a burglary, matter? The question – Right. Right? Really wasn't it whether the defendant really thought this looked like a burglary? Well, because it was – it was brought out – looking back at this, can you understand how somebody could have mistaken this for a burglary? And I believe a statement was made that, in questioning the victim, or an opening statement, anyone would have thought this was a burglary in process. Well, here we have someone with experience, granted in another State, primarily with regard to burglary, but experience investigating many burglaries, saying that he had never seen burglaries consistent with – with these facts in this case. And it's the government's position that his experience, his opinion, made the fact that this was a burglary in process, more likely to be true. Is that your argument? It made the defense, essentially, although it really wasn't a legal defense of the charge, but they – but the theory of defense, be it sound – legally sound or not, was essentially that the victims were acting like burglars and the defendants were using – I understand. But my question is a different question, and you're just about out of time, so could you answer my question? So was it relevant to his – to the defendant's experience? In its objective knowledge, yes, because it tends to show that, contrary to what the defense counsel said in opening arguments, anyone would have thought this was a burglary. No, this is not something that anyone would have thought was a burglary because it was not consistent with how burglaries are routinely or commonly conducted. Thank you. I realize you're over time, but I'll follow this up for just a minute. It's possible that the two defendants, the two brothers, when they say burglary, are not legally sophisticated. And so what they meant was thieves. They had lost, apparently, a motorbike that had been stolen from the property a short time before, and it seems to me that for – to have an ATF officer whose experience is in New Hampshire and Virginia and not on an Indian reservation out west to talk about what a, quote, burglary is, is almost silly. Because what were – the excuse of the brothers was, whether legally a valid excuse or not, they thought that these people had been stealing. And they said burglary, but I'm not sure they can pass a bar exam as to the elements of burglary. So I have to say that I found the testimony of that officer probably erroneously admitted, maybe not in the end harmlessly admitted, but I just don't see that it was proper in the case. And, Your Honor, just very briefly, if I could respond to that, I would just point out that the threshold as to relevancy is low, although there may be difference between burglaries in the eastern states and on the Indian reservations in Arizona. Well, I'm not so much interested in the legal definition, but in the behavior of individuals on a reservation who are engaged in thievery than in non-reservation lands in Virginia and New Hampshire. So the man's experience, I think, is not particularly relevant. I understand the Court's concern. I again would point out that the threshold is low, any evidence tending to make a fact more or less probable, and I think that although perhaps his experience was not identical, it could still tend to show that this is not something that was perceived as a burglary. And as the Court points out, I do think in light of all the other evidence, if there was any error, that it would be harmless in this case. Thank you. I appreciate that you raised the issue of Agent Hanover's testimony, because it does tie into the question of these jury instructions, and it also answers your question, Judge Fletcher, about why that testimony is, in fact, harmful error, and the reason is this.  It's likely irrelevant, but by admitting that testimony, what happened was the government was able to establish that Mr. Garcia's subjective belief was unreasonable. Unreasonableness was not a requirement under the statute. It has nothing to do with just cause and excuse. It has nothing to do with any of that. But what it did was it attacked Mr. Garcia's credibility when he testified, and therefore, the case went to the jury with a set of instructions and also testimony that wasn't evidence that seemed to indicate that anything that he believed was unreasonable and, therefore, the unreasonableness of his belief must matter. So in the absence of an instruction that says you are allowed to consider just cause and excuse, that testimony was harmful. To go back just a little bit further, Judge Gould, you asked a question about how much time it took for the entire chase to ensue, and I would like to just remind you that the period of time that we're talking about where the shots were fired off within the Federal jurisdiction, that is the reservation, was a half mile from Mr. Garcia's home. It was so that part of it was very short, and when that incident occurred, when the two shots were fired off, both one car was at a standstill, Mr. Garcia's car, and the probation officer's vehicle had gone around. So the testimony was that it sped off. I don't know what that means in terms of miles per hour, but at least both vehicles had been at a standstill just before they went around. I submit to the Court that that was an issue. These are all issues that the jury should have been allowed to consider. Now, you're a minute over, so if you'd like to wrap up. I would like to wrap up. Thank you, Judge. I agree that this was not a case where there should have been a justification instruction, but this was a case where the statutory language should have been followed. The defendant was entitled to his theory of the case instruction, and this Court has held that the failure to give the jury these instructions affected the verdict because the jury was not aware that they could apply the facts to any recognized defense. And because of that, there was reversible error, and I thank the Court for its time. Thank you very much. Thank both sides for their arguments. The United States v. Garcia has now submitted the next case on the argument calendar this morning, Smith v. Clark County School District.
judges: Fletcher, Gould, Christen